IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| LAVONNE PENNY LAMAR and | ) | |
| WILLIAM K. KEY, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | Case No. 1:14-cv-571-MHT-PWG |
| | ) | |
| STATE OF ALABAMA | ) | |
| DEPARTMENT OF | ) | |
| CONSERVATION AND | ) | |
| NATURAL RESOURCES, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Lavonne "Penny" Lamar is an employee of Defendant Alabama

Department of Conservation and Natural Resources ("DCNR") and alleges that she

was subjected to retaliation, a hostile work environment, disparate treatment, and

constructive demotion in violation of Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. § 2000e *et seq.* Plaintiff William K. Key was also an employee

of DCNR and alleges the same claims as Lamar as well as violations of the

Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, Section 504 of

the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Rehabilitation Act"), and the

Family and Medical Leave Act ("FMLA"), 42 U.S.C. § 12631 *et seq.* The Plaintiffs

bring their respective claims against DCNR, Gregory M. Lein in his official capacity

as the Director of DCNR, and DCNR employee Lisa Laraway in her official capacity as the District Superintendent of the Alabama Gulf State Park[2] (collectively, "Defendants").  This matter is before the court on the following motions: Plaintiff Key's motion for partial summary judgment (Doc. 79); Defendants' motion for summary judgment with regard to Lamar's claims (Doc. 86); and Defendants' motion for summary judgment with regard to Key's claims (Doc. 88).  The motions are fully briefed and are taken under submission on the record and without oral argument.

## I.   JURISDICTION

Subject matter jurisdiction is conferred by 28 U.S.C. § 1331 as to Plaintiffs' federal causes of action.  The parties do not contest personal jurisdiction or venue, and the court finds sufficient information of record to support both.  *See* 28 U.S.C. § 1391.  On May 19, 2015, the above-styled matter was referred to the undersigned for review by United States District Judge Myron H. Thompson. (Doc. 47); *see also* 28 U.S.C. § 636(b); Rule 72, Fed. R. Civ. P.; *United States v. Raddatz,* 447 U.S. 667 (1980); *Jeffrey S. v. State Board of Education of State of Georgia,* 896 F.2d 507 (11th Cir. 1990).

## II.   SUMMARY JUDGMENT STANDARD OF REVIEW

---

[2]Alabama Gulf State Park is an Alabama State Park owned by the State of Alabama and operated by DCNR's State Parks Division.  (Doc. 90-4 at ¶ 5).

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56 requires the nonmoving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. "Where 'the adverse party does not respond, summary judgment, *if appropriate*, shall be entered against the adverse party.' Fed. R. Civ. P. 56(e) (emphasis added). Thus, summary judgment, even when unopposed, can only be entered when 'appropriate.'" *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004).

The substantive law will identify which facts are material and which are irrelevant. *Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  *See Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  When opposing a motion for summary judgment, however, the nonmovant can no longer rest on mere allegations, but must set forth evidence of specific facts.  *See Lewis v. Casey*, 518 U.S. 343 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023.  "If the evidence [presented by the nonmoving party to rebut the moving party's evidence] is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249 (internal citations omitted).

## III.   BACKGROUND AND STATEMENT OF MATERIAL FACTS

Plaintiff Lamar is an African-American woman employed by DCNR. (Doc. 29 at ¶ 4).  Lamar was first employed by DCNR in 1985 and was later appointed to a "Merit System" job classification of Parks Facilities Operator on February 16, 2007. (Doc. 90-18 at p.7).  On April 2, 2012, Laraway was appointed to the position of Alabama Gulf State Park District Superintendent, and served in a supervisory position over Key, who in turn served in a managerial position over Lamar. (Doc. 80 at p.3; Doc. 89 at pp.14,18; Doc. 90-3 at ¶¶ 12-15).  Lamar alleged that in May

4

2012,"Laraway stated to Harry Dwyer, the Golf Course Manager, ... '[Lamar] is not the right kind of people for that job.'" (Doc. 29 at ¶ 17). Lamar further alleged that Laraway had commented to Key "try working with 80 of [Lamar's] kind." (Doc. 90-18 at p.74). Lamar alleged that she was the only African-American holding a supervisory position during the times relevant to this action. (Doc. 29 at ¶ 18). Lamar alleged that Laraway began to harass her, refused to communicate with her, "treated her differently than other Park Facility Operators," and "restructure[d] Lamar's job duties and responsibilities removing facility and managerial responsibilities amounting to a constructive demotion." (Doc. 29 at ¶ 20). Lamar alleged that "Laraway instructed Lamar's direct supervisors, William Key and Randy T. Stults, ... to issue to Lamar unwarranted reprimands" which were "issued for non-performance of duties and responsibilities that were outside of Lamar's job description and responsibility at the Park." (Doc. 29 at ¶ 21). Lamar alleges that she complained of discrimination and a hostile work environment to both Key and Stults, and that on "December 18, 2012, Lamar filed a formal complaint of discrimination asserting a hostile work environment with her direct supervisor, Dwyer." (Doc. 29 at ¶ 29). Dwyer forwarded Lamar's complaints to Laraway and Lien. (Doc. 91-8 at pp.2-3). Major Scott Bannon of the Marine Resources Division of DCNR conducted an investigation into Lamar's complaint in December 2012. On January 30, 2013,

5

Bannon issued a report finding that Lamar suffered no discrimination or a hostile work environment. (Doc. 91-19).

Lamar alleged that following her formal complaint, she experienced further harassment and severe scrutiny of her job performance. (Doc. 29 at ¶ 29). In March 2013, Stults terminated the employment of Lamar's daughter Trinese Lamar with DCNR on the basis that she had failed to report for work as scheduled. (Doc. 87 at p.40; Doc. 91-23 at p.18). On April 23, 2013, Lamar signed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). Lamar alleged that she was provided with inadequate resources, training, and personnel to do the jobs assigned to her, and was then reprimanded for her failures. (Doc. 29 at ¶¶ 30-50). In July 2013, Lamar was permanently reassigned to work at the Golf Pro Shop as a retail clerk under Dwyer's supervision. (Doc. 29 at ¶ 53). Lamar's former position of Event Manager was reassigned to Holly McCraney, a white female. (Doc. 29 at ¶ 51). Lamar alleged that the reassignment was a demotion and that DCNR failed to provide her a hearing on that demotion. (Doc. 29 at ¶¶ 56-57). The EEOC issued Lamar a right-to-sue letter on March 7, 2014. (Doc. 1-1).

Plaintiff Key was first employed by DCNR as a park ranger in March 2001, and served in that capacity until his employment was terminated by DCNR on April 10, 2013. (Doc. 80 at pp.2,16; Doc. 89 at p.15). As a park ranger, Key was responsible

for law enforcement activities as well as managerial duties, specifically supervision of the Pier and Pavilion and the Picnic Area at Gulf State Park, which included supervision of Lamar. (Doc. 89 at p.16).  In July 2012, Laraway asked Key to issue a reprimand to Lamar, but  Key believed the request was motivated by discrimination, questioned Laraway's motives, and refused to issue the reprimand. (Doc. 82-10 at p.2; Doc. 82-21 at p.3).  In September 2012, Michael Guinn, a Park Manager who assisted Laraway in her district and had previously supervised Key, told Key that he "wanted to give him the opportunity to resign because I felt that [Laraway] may have enough to have him terminated and I didn't want [Key] to go out like that." (Doc. 84-13 at p.3; Doc. 89 at p.14).  Key tendered and then retracted his resignation on September 21, 2012. (Doc. 82-3 at p.3).  On October 2, 2012, Key was informed by a letter from DCNR Commissioner Gunter Guy that he was being suspended without pay for ten working days as a disciplinary action, and Key signed the notice waiving a pre-suspension hearing. (Doc. 82-6 at p.2; Doc. 89 at pp.18-19).

When Key returned from his suspension on October 15, 2012, Laraway modified Key's duties, decreasing his managerial duties and having him perform the duties of a courier and check easements. (Doc. 80 at p.3; Doc. 89 at p.19).  On November 7, 2012, Key attended a fire arms qualification session along with other DCNR law enforcement officers.  Key successfully qualified at the session, but

Laraway expressed concerns that Key exhibited "unusual behavior." (Doc. 80 at p.4; Doc. 89 at p.19). The next day, Laraway sent an email to DCNR Operations and Maintenance Supervisor Tim Wishum asking for information on how to have an employee drug tested. (Doc. 82-9 at p.2).

On December 17, 2012, Key filed a discrimination complaint with DCNR alleging that Laraway had retaliated against him for refusing to reprimand Lamar. (Doc. 82-10 at p.2). On December 19, 2012, DCNR requested that Bannon conduct an investigation regarding Key's complaints. (Doc. 84-8 at pp.17-18). On January 16, 2013, Wishum directed Key to submit to a drug test, which returned a positive result for amphetamines, which Key attributed to his prescription for Vyvanse, an amphetamine used for the treatment of Adult Attention Deficit Disorder. (Doc. 80 at p.7). DCNR placed Key on mandatory leave, and directed Key to undergo an evaluation through an Employee Assistance Program. (Doc. 80 at p.8; Doc. 89 at pp.21-22). Key alleged that Wishum refused or failed to interact with Key to determine if accommodations were available to allow him to continue his employment with DCNR. (Doc. 80 at p.12).

On February 6, 2013, Key filed a Charge of Discrimination with the EEOC alleging discrimination and retaliation in violation of Title VII and the ADA. (Doc. 112-4). On March 15, 2013, Commissioner Guy sent Key a notice of a Pretermination

8

Hearing which was subsequently conducted in the commissioner's conference room on March 25, 2013. (Doc. 80 at p.13). Key filed his Amended Charge of Discrimination with the EEOC on April 4, 2013. (Doc. 116-31). On April 10, 2013, Commissioner Guy sent a letter to Key in which Guy notified Key that his employment with DCNR was terminated. (Doc. 116-20 at p.11). The EEOC issued Key's right-to-sue letter on April 1, 2014. (Doc. 1-2).

On June 5, 2014, Lamar and Key filed a Complaint in ths court, which they amended on July 29, 2014, alleging the following claims:

> Count I - Retaliation in Violation of Title VII; Lamar and Key assert this claim against DCNR, Lein, and Laraway in their official capacities.

> Count II - Retaliatory Hostile Work Environment in Violation of Title VII; Lamar and Key assert this claim against DCNR, Lein, and Laraway in their official capacities.

> Count III - Disparate Treatment in Violation of Title VII; Lamar asserts this claim against DCNR, Lein, and Laraway in their official capacities.

> Count IV - Constructive Demotion in Violation of Title VII; Lamar and Key assert this claim against DCNR, Lien, and Laraway in their official capacities.

> Count V - Retaliation in Violation of the ADA and Section 504 of the Rehabilitation Act; Key asserts this claim against DCNR, Lien, and Laraway in their official capacities.

> Count VI - Interference in Violation of the ADA and Section 504 of the Rehabilitation Act; Key asserts this claim against DCNR, Lien, and Laraway in their official capacities.

Count VII - FMLA Interference; Key asserts this claim against DCNR, Lien, and Laraway in their official capacities.

Count VIII - Failure to Supervise and Train in Violation of the Fourteenth Amendment pursuant to § 1983. Lamar and Key assert this claim against DCNR, Lien and Laraway in their official capacities, and the State of Alabama Personnel Department.

Count IX - Denial of Procedural and Substantive Due Process in Violation of the Fourteenth Amendment pursuant to § 1983. Lamar and Key asserted this claim against DCNR, Lien and Laraway in their official capacities, and the State of Alabama Personnel Department.

Count X - Violation of the Fourth Amendment pursuant to § 1983. Lamar and Key asserted this claim against DCNR, Lien and Laraway in their official capacities, and the State of Alabama Personnel Department.

Doc. 29 at ¶¶ 143-234.[3]

## IV. DEFENDANT'S MOTION AS TO LAMAR'S CLAIMS

A. Claims against Lein and Laraway in their Official Capacities

Defendants argue that summary judgment is due as to Lamar's Title VII and race discrimination claims against Lein and Laraway in their official capacities because their employer, DCNR, has been properly named as a defendant. (Doc. 87 at p.22). Lamar did not address this issue in her response brief. (Doc. 102). "Individual

---

[3]Defendant Governor Robert J. Bentley was dismissed without prejudice from this action by stipulation of the parties on July 22, 2014. (Doc. 24). Defendant State of Alabama Personnel Department and Counts VIII, IX, and X of Plaintiffs' Amended Complaint (Doc. 29) were dismissed with prejudice by stipulation of the parties on February 22, 2016. (Doc. 73).

capacity suits under Title VII are ... inappropriate. The relief granted under Title VII is against the *employer*, not individual employees whose actions would constitute a violation of the Act." *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991)(emphasis in original).  Accordingly, judgment is due in favor of Lein and Laraway in their official capacities on Counts I-IV.

B. Pattern and Practice Claims

Defendants argue that Lamar "may not rely on the 'pattern and practice' allegations in the Amended Complaint to avoid summary judgment or articulate a viable claim" because, they argue, "[o]nly the EEOC or a class of plaintiffs may bring a pattern and practice claim." (Doc. 87 at p.23).  *See Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 969 n.30 (11th Cir. 2008)("Several of our sister circuits have already recognized the prudence of limiting a private pattern or practice claim to certified class actions.")(abrogated on other grounds); and *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000)("In contrast [to a disparate treatment claim], a pattern and practice claim either may be brought by the EEOC if there is "reasonable cause to believe that any person or group of persons is engaged in a pattern or practice" of discrimination ... or by a class of private plaintiffs under 42 U.S.C. § 2000e, et. seq...").  Lamar does not argue in response that she intended to bring a pattern and practice claim. (Doc. 102 at pp.41-45).

11

However, Lamar argues that she has offered evidence of a "pattern of discriminatory conduct" not as a separate cause of action, but "to establish Defendants' motive, bias, and intent" in her other claims under Title VII. (Doc. 102 at p.42). Moreover, a plain reading of Lamar's Amended Complaint does not state a pattern and practice claim. Although Defendants argue that Lamar "may not bring evidence of a 'pattern and practice claim,'" they offer no authority in support of that proposition. While the law in the Eleventh Circuit is clear that Lamar as an individual may not bring a claim of pattern and practice, Defendants have not otherwise demonstrated that the evidence of a pattern and practice may not be admissible in support of other claims brought by Lamar. Therefore, to the extent that Defendants request summary judgment as to a pattern and practice claim, there is no such claim brought by Lamar, and Defendants' motion on this issue is due to be denied.

C. Exhaustion of Administrative Remedies

Defendants next argue that Lamar failed to exhaust her administrative remedies as they relate to retaliation claims arising after she filed her EEOC charge in April 2013. (Doc. 87 at p.23ff). The time for filing a charge of discrimination with the EEOC is provided by 42 U.S.C. § 2000e-5(e)(1), which provides as follows:

"A charge under this section shall be filed within one hundred and

eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency."

In this case, Lamar filed her charge of discrimination with the EEOC on April 23, 2013, and received her notice of rights on March 7, 2014. This action was filed in this court on June 5, 2014. Defendants therefore argue that Lamar's "claims of retaliation that post-date her April 23, 201[3] EEOC Charge have not been properly administratively exhausted and such should be barred from consideration in this lawsuit..." (Doc. 87 at p.27). Defendants do not specify any particular claim of retaliation which Lamar alleged to have occurred after April 23, 2013, for which they would argue Lamar failed to administratively exhaust her remedies. However, it appears that Defendants are referring to the permanent reassignment of Lamar to the Golf Pro Shop in July 2013.

Defendants rely on the Eleventh Circuit's unpublished opinion in *Duble v.*

13

*FedEx Ground Package Sys., Inc.*, 572 F. App'x 889 (11th Cir. 2014), cert. denied,

135 S. Ct. 2379, 192 L. Ed. 2d 165 (2015):

It is unnecessary for a plaintiff to exhaust administrative remedies prior to filing a judicial claim of retaliation if that claim grew "out of an earlier charge," because the "the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court." *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir.1988) (quoting *Gupta v. E. Tex. State Univ.*, 654 F.2d 411, 414 (5th Cir. Unit A Aug.1981)). This exception, however, does not apply, when no other properly raised judicial claim exists to which the retaliation claim may attach.

In *Gupta*, the plaintiff filed two EEOC charges and then commenced his lawsuit arising out of those charges. 654 F.2d at 413. While the case was pending, the plaintiff was notified his employment contract would not be renewed for the following year. *Id*. He argued the termination was a retaliatory action against him, but he never filed a charge with the EEOC alleging the retaliation. Under those circumstances, we concluded it was unnecessary for the plaintiff to file a charge with the EEOC before amending his complaint to include retaliation, because the claim grew out of the administrative charge that properly was before the district judge. *Id*. at 414.

We applied the *Gupta* rule in *Baker*, where the plaintiff had filed a lawsuit in district court pursuant to a right-to-sue letter. 856 F.2d at 168. While the complaint was pending, she filed a motion for preliminary injunction and sought to enjoin allegedly retaliatory actions taken by her employer as a result of the suit. *Id*. She did not file a separate charge with the EEOC regarding these actions, and her employer argued the district judge had no jurisdiction to entertain the motion, because she had not exhausted her administrative remedies for those actions. *Id*. We held she did not have to exhaust her administrative remedies for the district judge to have jurisdiction over the motion. *Id*. at 169.

14

In *Gupta*, we determined the plaintiff could proceed on retaliation claims growing out of EEOC charges that already were before the district judge. *See Gupta*, 654 F.2d at 414 ("[T]he district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court."). In Baker, we did not state whether the administrative charge already had to be before the district judge, but noted the "complaint had been pending for four months in the district court," when the plaintiff filed a motion for preliminary injunction. *Baker*, 856 F.2d at 168–69.

Duble's termination claims relate to a discrete act of alleged discrimination that occurred after he filed his initial charge pertaining to FedEx's purported failure to accommodate. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114, 122 S.Ct. 2061, 2073, 153 L.Ed.2d 106 (2002) ("Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.' "). Moreover, Duble was terminated in November 2009 and did not file suit in district court until September 2011. Because this case is factually distinguishable from *Gupta* and *Baker*, we conclude the *Gupta* rule does not apply. Duble's EEOC claim was still pending, when he was terminated, ostensibly for violating FedEx's email policy, and he had the opportunity to amend his EEOC charge or file a new charge relating to his termination. Duble, however, chose not to amend or file a new charge. Therefore, Duble failed to exhaust his administrative remedies regarding his termination claims.

*Duble*, 572 F. App'x at 892-93. *See also Robinson v. Koch Foods of Ala.*, No. 2:13-cv-577-WKW, 2014 WL 4472611 (M.D. Ala. Sept. 11, 2014)(Employment action occurred after the filing of an EEOC charge, but before the filing of a complaint without filing a new or amended EEOC charge.).

"Although an unpublished opinion is not binding on this court, it is persuasive authority. *See* 11th Cir. R. 36-2." *United States v. Futrell*, 209 F.3d 1286, 1289 (11th

Cir. 2000).  Although the holding in *Duble* may be persuasive and on-point with the facts of this case, the holding in *Baker* is binding, and "[t]he court shall grant summary judgment if the movant shows there is no genuine issue of material dispute as to any material fact **and the movant is entitled to judgment as a matter of law**." Rule 56(a), Fed. R. Civ. P. (emphasis added).  In this case, the holding in *Duble* notwithstanding, Defendants have failed to demonstrate that as a matter of law that Lamar's claim of retaliation did not grow out of an earlier charge to the extent that she has argued her transfer to the Golf Pro Shop was an adverse employment action. Moreover, as discussed below, her claim of retaliation survives regardless of consideration of alleged retaliation after April 23, 2013.  Accordingly, Defendants' motion for summary judgment on this issue is due to be denied.

D. Retaliation Claims

Defendants next present a series of arguments in support of their motion to for summary judgment on Lamar's retaliation claims (Counts I and II, Doc. 29 at ¶¶ 143-62; Doc. 87 at pp.27ff).

> Title VII also prohibits retaliation against an employee "because [s]he has opposed any practice made an unlawful employment practice by [Title VII], or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing [thereunder]." 42 U.S.C. § 2000e–3(a). A *prima facie* case of retaliation under Title VII requires the plaintiff to show that: (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse

16

employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir.2001).

*Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). Each of Defendants' arguments are addressed in turn as follows.

### 1. Prima Facie Evidence of Protected Activity

Defendants argue that Lamar has not met the first element of a claim of retaliation because "there is no evidence that [Lamar] even mentioned race, much less connected any of her generalized complaints of mistreatment to a violation of law other then when she complained on December 11, 2012 and when she filed a Charge of Discrimination on April 23, 2013." (Doc. 87 at p.31). However, that is exactly what Lamar did. The record is clear that on December 17, 2012, Dwyer sent an email to Lein and Laraway in which he stated: "Ms. Lamar states that she has been racially discriminated against in her position at Gulf State Park by Ms. Lisa Laraway and that her working environment is hostile." (Doc. 91-8 at p.2). The following day, Lamar sent an email to a number of recipients, including Laraway and Dwyer, in which she stated: "During my time at the Beach Pavilion Lisa Laraway has displayed discriminatory treatment toward me and created a hostile working environment due to my race, African-American." (Doc. 91-8 at p.4). The record is abundantly clear that Lamar engaged in a protected activity and thereby made the requisite *prima facie*

17

showing for the first element of a claim of retaliation.

### 2.   Adverse Employment Action

Defendants next argue that none of the actions about which Lamar complains constitute adverse employment actions sufficient to bring her claims within the scope of Title VII's anti-retaliation provision.  To satisfy the second element of a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have "dissuaded a reasonable worker from making or supporting a charge of discrimination"' *Rochon*, 438 F.3d, at 1219 (quoting *Washington*, 420 F.3d, at 662)." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

Among the actions of which Lamar complained, it is undisputed that in March 2013, Stults terminated the employment of Trinese Lamar with DCNR on the basis that she had failed to report for work as scheduled. (Doc. 87 at p.40; Doc. 90-25 at p.18).  However, DCNR employee Teresa Hill Carlisle testified in her deposition that Stults "had changed the schedule, and he told me not to call [Trinese] or he would fire me." (Doc.118-7 at pp.30-31).  Although Carlisle was not certain whether Trinese had been to work since Stults changed the schedule, construing the evidence in the light most favorable to Lamar as the non-moving party, there is a genuine issue of material fact as to whether Stults changed the schedule as a pretext to fire Trinese

approximately three months after Lamar had lodged a complaint of discrimination with DCNR.  Viewing the evidence in the light most favorable to Lamar, the firing of her daughter after she filed a complaint of discrimination would be materially adverse and it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.

### 3. Temporal Proximity

Defendants argue that there is insufficient temporal proximity between Lamar's protected acts and alleged retaliatory claims. (Doc. 87 at p.40).  However, Defendants make this argument by failing to recognize Lamar's direct complaint of discrimination to DCNR on December 17-18, 2012. (Doc. 91-8 at p.2).  *See* 42 U.S.C. § 2000e ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.").  Defendants argue that Lamar's protected actions and any potential retaliation are too proximally distant as a matter of law. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007)("A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough.").  The parties have not directed this court to evidence of the exact date on which Trinese Lamar's employment was effectively or officially

19

terminated.  However, evidence in the record indicates that Trinese's last day of work was February 19, 2013, and that the last pay period she worked ended on February 28, 2013. (Doc. 113-13 at pp.2-3). As a result, the length of time between Lamar's complaint of discrimination in late December 2012 and the termination of her daughter's employment in February or March 2013 is indeterminate and could be logically as short as two months. Construing the facts in the light most favorable to Lamar, the acts are sufficiently temporally proximate to present a genuine issue of material fact as to whether the termination of Trinese's employment was in retaliation to Lamar's complaint of discrimination, and therefore the evidence is sufficient to survive a motion for summary judgment.

### 4. Pretext for Retaliatory Motive

Defendants next argue that Lamar "cannot offer any evidence that the reasons for the alleged adverse actions about which she complains are a mere pretext for covering a retaliatory motive." (Doc. 87 at p.44).  However, despite addressing numerous employment actions for which they claim legitimate, non-discriminatory reasons, the Defendants fail to address the termination of Trinese Lamar after Lamar lodged a complaint of discrimination with DCNR and just before she filed her charge of discrimination with the EEOC.  The facts surrounding Trinese's termination are sufficiently in question to raise a genuine issue of material fact as to whether her

termination was pretextual, and therefore retaliatory against Lamar.  Although the Defendants address this issue in their reply brief (Doc. 125 at pp.56-58), whether the reason for Trinese's termination was pretextual remains a genuine issue of disputed material fact.

### 5. Motivating Factor

Defendants argue that Lamar "cannot succeed on her retaliation claim, because the Supreme Court of the United States has rejected application of the 'motivating factor' provision applicable to anything other than status-based discrimination claims brought under Title VII. *See* [*Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534, 186 L. Ed. 2d 503 (2013)]."  In *Nassar*, the Supreme Court held that "[t]he text, structure, and history of Title VII demonstrate that a plaintiff making a retaliation claim under § 2000e–3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." 133 S. Ct. at 2534.  The Supreme Court did not apply that holding, but remanded the case to the trial court for further proceedings. *Id.* Defendants admit that the Eleventh Circuit has not resolved the question of whether the but-for causation requirement is the employee plaintiff's burden with respect to a *prima facie* case or in response to pretext. (Doc. 87 at p.51).  Moreover, Defendants posit that "[t]he decisions of the Middle District of Alabama also appear to reflect a split opinion on the application

of *Nassar...*" (Doc. 87 at p.53).   Nevertheless, Defendants argue that "[b]ecause Defendants have legitimate non-retaliatory reasons for each of the acts about which Plaintiff complains, she cannot establish the but for causation required by *Nassar*. There is no evidence that calls into question the motivations for the actions taken with respect to Plaintiff's employment..." (Doc. 87 p.54).   However, as discussed above, Plaintiff has come forward with such evidence, i.e., that the reason for the termination of Trinese's employment presents a genuine issue of disputed material fact. Therefore, Defendants' motion for summary judgment cannot be premised on this argument.

### 6. But-For Causation

Defendants next argue that Lamar's assertion that DCNR had both a retaliatory motive and a discriminatory motive precludes her from recovery on her retaliation claims. (Doc. 87 at p.55).  Defendants predicate this argument on the law applicable to claims brought under the Age Discrimination in Employment Act, 29 U.S.C. §621ff ("ADEA").  Based on the case law applicable to ADEA claims, Defendants assert that Lamar "cannot simultaneously advance her retaliation claims along with her race discrimination claim in this lawsuit, because her retaliation claim requires her to prove that her protected conduct was *the* 'but for' cause of the decisions to take the allegedly adverse actions against  her." (Doc. 87 at p.56)(emphasis added).

22

Defendants' assertion is an attempt to conflate the requirement announced in *Nassar,* 133 S. Ct. at 2534, that Title VII plaintiffs must present "*a* but-for cause of the alleged adverse action by the employer" with the requirement applicable to an "ADEA claim ... [which] requir[es] plaintiffs to show that age was *the* 'but for' cause of an employment action." *Mora v. Jackson Mem'l Found., Inc.*, 597 F.3d 1201, 1204 (11th Cir. 2010)(emphasis added).  Lamar has not alleged claims under the ADEA, and the requirements of a single but-for motive as applicable to ADEA claims are inapposite to Lamar's Title VII retaliation claim.  Therefore, Defendants' argument for summary judgment on this issue is due to be denied.

E. Retaliatory Hostile Work Environment

Defendants argue that Lamar's "retaliatory hostile environment claim fails based on previously articulated arguments that each of the things about which she complains fail to suffice to make out a claim which Title VII protects." (Doc. 97 at p.57).

> To establish a hostile work environment claim under Title VII, the plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir.2002).

*Gowski v. Peake*, 682 F.3d 1299, 1311 (11th Cir. 2012).  In regard to the specific

claim of retaliatory hostile environment, the Eleventh Circuit further stated:

> The requirement that the harassment be "severe or pervasive" contains an objective and a subjective component. *Miller*, 277 F.3d at 1276. "Thus, to be actionable, this behavior must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceive[s] ... to be abusive." *Id*. (internal quotation marks omitted). In evaluating the objective severity of the harassment, this court looks at the totality of the circumstances and considers, among other things: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id*. "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." *Harris*, 510 U.S. at 23, 114 S.Ct. 367.
>
> Discrete acts cannot alone form the basis of a hostile work environment claim. *See Davis v. Coca–Cola Bottling Co. Consol.*, 516 F.3d 955, 970 (11th Cir. 2008) (emphasis added); see also *McCann v. Tillman*, 526 F.3d 1370, 1378 (11th Cir. 2008) (as opposed to "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire," a hostile work environment claim addresses acts "different in kind" whose "very nature involves repeated conduct," such as "'discriminatory intimidation, ridicule, and insult.' " (quoting *Nat'l R.R. Passenger Corp.*, 536 U.S. at 117, 122 S.Ct. 2061)). But the jury could consider discrete acts as part of a hostile work environment claim. *See, e.g.*, *Nat'l R.R. Passenger Corp.*, 536 U.S. at 117, 122 S.Ct. 2061 (a hostile work environment claim depends on "a series of separate acts that collectively constitute one 'unlawful employment practice.' " (internal citation omitted)); *see also Chambless v. Louisiana–Pacific Corp.*, 481 F.3d 1345, 1349–50 (11th Cir. 2007) (discussing, for timeliness purposes, discrete acts that are sufficiently related to a hostile work environment claim that they can be considered part of the same claim).

*Gowski*, 682 F.3d at 1312-13. In response, Lamar argues that she presented evidence

of a hostile work environment because of racially discriminatory comments (Doc. 102

at p.39) and that Laraway engaged in a pattern of retaliatory acts against Lamar and

other employees "in the form of reprimands, poor evaluations, job modifications,

constructive demotions, and/or terminations." (Doc. 102 at p.42). Specifically, Lamar

argues that

> evidence establishes that employees who participated in the Key hearing
> and/or opposed discriminatory practices in the workplace received
> adverse actions against them. Stephanie Carlisle was fired the same day
> she attended Key's hearing. ([Doc. 118-7 at p.9-13]). Theresa Carlisle
> was demoted and eventually fired for her participation in Key's hearing.
> Glenda Malec, who actually testified at Key's hearing, recounted
> hostility being directed at her because of her participation. ([Doc. 118-9
> at pp.10-12]). Dwyer opined that his reporting of the Key and Lamar
> complaints resulted in his eventual resignation.([Doc. 117-20 at p.73,
> 79-93, 101-103; Doc. 117-21 at pp.115-16; Doc. 113-11; Doc. 116-9;
> Doc. 117-19 at pp.4-8]). Others also complained and their complaints
> were summarily dismissed as not be relevant and/or not having met the
> legal criteria for hostile work environment and they were directed to be
> "counseled." ([Doc. 106-5]).

Viewing each of the discreet acts as described in these exhibits in the light most

favorable to Lamar, she has demonstrated a pattern of retaliatory acts involving

multiple employees which affected their job performance or ability to continue in

their job.    Accordingly, Defendant's motion for summary judgment as to this

argument is due to be denied.

F. Disparate Treatment Claim

Defendants next argue that Lamar cannot meet her *prima facie* requirements for her Title VII Disparate Treatment claim.

> In evaluating disparate treatment claims supported by circumstantial evidence, we use the framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Under this framework, the plaintiff first has the burden of establishing a *prima facie* case of discrimination, which creates a rebuttable presumption that the employer acted illegally. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-28 (11th Cir. 1997). A plaintiff establishes a *prima facie* case of disparate treatment by showing that she was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class. *See, e.g.*, *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).

*Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004). Defendants do no dispute that Lamar belongs to a protected classification as an African-American. However, Defendants argue that Lamar failed to show that similarly situated employees of DCNR outside of Lamar's protected classification were treated more fairly than she was treated. (Doc. 87 at p.75.) In response, Lamar asserts that she "has also established that other managers in the Park - Dwyer, Bailey, and Carlisle - all experienced similar problems with emails, the credit card machine, and Megasys, but did not get, like Lamar did, counseling." (Doc. 102 at 18.) Lamar alleges that she was subjected to greater discipline and scrutiny for her job performance and that "DCNR's

26

asserted business reason that Lamar was performing poorly is not the real reason for the adverse actions, such as Lamar's reassignment of duties, being taking against her." (Doc. 102 at p.20).

In presenting her *prima facie* case, "[t]he plaintiff and the employee she identifies as a comparator must be similarly situated 'in all relevant respects.' ... The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004), citing *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). In her response to Defendant's motion for summary judgment, Lamar does not identify the race any of her exemplars or state that they are outside of her protected class. (Doc. 102 at pp.17-20). At the time of the alleged disparate treatment at issue, Lamar was employed as a "Facility Operator at the Gulf State Park Pavilion." (Doc. 102 at p.3). Aside from identifying Dwyer and Carlisle as "other managers in the park," Bailey as "the Campground Assistant Manager," and Bobby Lamberth as a "Maintenance Supervisor," Lamar does not state or direct this court to any evidentiary support for the proposition that the positions held by her stated exemplars were similarly situated to her own. (Doc. 102 at pp.3, 18).  Because Lamar failed to identify a similarly situated exemplar outside of her protected class that was treated more fairly, she fails to make a *prima facie* case of Title VII disparate treatment, and

27

Defendants' motion for summary judgment on this issue is due to be granted in their favor on Lamar's claim of disparate treatment.

### G. Constructive Demotion

Defendants next argue that summary judgment is due in their favor on Lamar's constructive demotion claim. Although the Eleventh Circuit has not recognized "constructive demotion" as an independent claim under Title VII, such claims have been considered under the general heading of Title VII discrimination claims in which the "constructive demotion" has been analyzed as a potentially adverse employment action. *See, e.g., Crayton v. Alabama Dep't of Agric. & Indus.*, 589 F. Supp. 2d 1266, 1284-85 (M.D. Ala. 2008). Lamar pleaded constructive demotion (Count IV; Doc. 29 at ¶¶169-76) as a separate cause of action from her Title VII disparate treatment/discrimination claim (Count III; Doc. 29 at ¶¶163-68). However, in her response to Defendants' motion for summary judgment on Lamar's claim for constructive demotion, Lamar stated that "the reassignment of [her] duties in July [2013] was just a further continuation of the harassment and discrimination directed at Lamar because of earlier EEOC complaints she asserted." (Doc. 102 at p.48). By Lamar's own argument, she has not raised a separate claim of "constructive demotion," rather, she has alleged an alternate, supporting claim of discrimination. Accordingly, Defendant's motion for summary judgment as to Lamar's claim of

28

"constructive demotion" is due to be granted, in that the discreet issues related to this portion of Lamar's claim of discrimination may be properly decided along with the other evidence provided in support of her surviving Title VII claims.

### H. Other Claims

Defendants also argue that Lamar "raised many claims in response to discovery in this action of which the Amended Complaint provides no notice whatsoever. The Court must not allow unpled claims to defeat Defendants' properly supported motion on the claims of which the Amended Complaint provides fair notice." (Doc. 87 at p.82). Defendants do not identify which claims, if any, they would have this court disallow. Accordingly, Defendants' motion for summary judgment as to the unidentified, "unpled claims" is due to be denied.

## V.   DEFENDANT'S MOTION AS TO KEY'S CLAIMS

### A. Claims Against Lein and Laraway in Their Official Capacities

Defendants argue that Key's Title VII, ADA, Rehabilitation Act, and FMLA claims against Lein and Laraway in their official capacities are due to be dismissed because their employer, DCNR, has been properly named as a defendant. (Doc. 89 at p.29).

> Official capacity suits are suits against state agencies, not against the people through whom agencies act. The Supreme Court has said that official capacity suits represent "only another way of pleading an action

29

> against an entity of which an officer is an agent," and a victory against a named individual in an official capacity suit is "a victory against the entity that employs him." [*Kentucky v.*] *Graham*, [473 U.S. 159,] 167–68, 105 S.Ct. at 3105–06. Thus, to impose *official* liability on a government entity amenable to suit, a plaintiff need do no more than name the government entity defendant; it is unnecessary also to name specific agents.

*Hobbs v. Roberts*, 999 F.2d 1526, 1530 (11th Cir. 1993)(emphasis in original). Key did not address this issue in his response brief. (Doc. 101). Accordingly, judgment is due in favor of Lein and Laraway as to the claims brought against them in their official capacities.

### B. Pattern and Practice Claims

Defendants argue that Key "may not rely on the 'pattern and practice' allegations in the Amended Complaint to avoid summary judgment or articulate a viable claim" because, they argue, "[o]nly the EEOC or a class of plaintiffs may bring a pattern and practice claim." (Doc. 89 at p.31). *See Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 969 n.30 (11th Cir. 2008)("Several of our sister circuits have already recognized the prudence of limiting a private pattern or practice claim to certified class actions.")(abrogated on other grounds); and *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000)("In contrast [to a disparate treatment claim], a pattern and practice claim either may be brought by the EEOC if there is "reasonable cause to believe that any person or group of persons is engaged

in a pattern or practice" of discrimination ... or by a class of private plaintiffs under 42 U.S.C. § 2000e, et. seq..."). Key does not argue in response that he intended to bring a separate pattern and practice claim. (Doc. 101 at pp.34-36).

Similarly to Lamar, Key appears to argue that he has offered evidence of a "pattern of discriminatory conduct" not as a separate claim, but "to establish Defendants' motive, bias, and intent" in her claims of discrimination and retaliation. (Doc. 101 at pp.35-36). Moreover, a plain reading of Key's Amended Complaint does not state a claim for a pattern and practice claim. Although Defendants argue that Key "may not bring evidence of a 'pattern and practice claim,'" they offer no authority in support of that proposition. While the law in the Eleventh Circuit is clear that Key as an individual may not bring a claim of pattern and practice, Defendants have not otherwise demonstrated that the evidence of a pattern and practice may not be admissible for the other claims brought by Key. Therefore, to the extent that Defendants request summary judgment as to a pattern and practice claim, there is no such claim brought by Key, and Defendants' motion on this issue is due to be denied.

C. Exhaustion of Administrative Remedies

Defendants next argue that "Key's failure to file any EEOC Charge after the termination of his employment necessarily means that he has failed to properly exhaust his administrative remedies prior to filing suit as is required for both claims

pursuant to Title VII and the ADA." (Doc. 89 at p.36). Specifically, Key amended his EEOC Charge on April 4, 2013. (Doc. 172 at p.2). Key's employment with DCNR was terminated on April 10, 2013, and Key did not further amend his EEOC Charge to reflect that his employment had been terminated.

> It has long been established in this circuit that the scope of a judicial complaint is defined by the scope of the EEOC investigation that "can reasonably be expected to grow out of the charge of discrimination." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970); *see also Turner v. Orr*, 804 F.2d 1223, 1226-27 (11th Cir. 1986). Because a claim of retaliation could reasonably be expected to grow out of the original charge of discrimination, the district court had jurisdiction over the motion for injunctive relief.

*Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988).   In his amended EEOC Charge, Key stated that "[o]n March 15, 2013, I was notified that my supervisor had proposed my termination of employment for poor work performance." (Doc. 116-31 at p.5).   Moreover, on May 1, 2013, DCNR submitted a response to Key's Amended EEOC Charge in which DCNR specifically responded to the EEOC's request to "[d]escribe any personnel action(s) involving [Key] taken after the earliest date any person in your organization had knowledge of [Key's] allegation(s) of discrimination." (Doc. 116-20 at p.10).   DCNR responded, in pertinent part: "Mr. Key was subsequently dismissed from state service effective April 11, 2013. A copy of Mr. Key's termination letter is attached." (Doc. 116-20 at p.10).   It is clear that the

termination of Key's employment six days after he submitted his Amended EEOC Complaint stating that termination had been recommended "could reasonably be expected to grow out of the original charge of discrimination" *Baker*, 856 F.2d at 169. Nevertheless, Defendants argue that under the holding in *Duble*, because Key's termination occurred after he filed his Amended EEOC Charge but before litigation commenced, he has failed to exhaust his administrative remedies. However, this case is factually distinguishable from *Duble* because Key's Amended EEOC Complaint specifically references his impending termination in the context of the harassment and retaliation. (Doc. 116-31 at pp.2-3). Key's retaliation claims do not "relate to a discrete act of alleged discrimination that occurred after he filed his initial charge" but to the ongoing efforts to terminate him which he clearly referenced in his Amended EEOC Charge. Accordingly, Defendant's motion for summary judgment on this issue is due to be denied.

D. Retaliation Claims

Defendants next present a series of arguments that "Key cannot proffer evidence from which a reasonable jury could find he has established a retaliation under Title VII." (Doc. 89 at p. 37). Each of Defendants' arguments are addressed in turn as follows.

1. Prima Facie Evidence of Protected Activity

33

Defendants do not argue that Key did not engage in protected conduct; rather, they argue that Key failed to present legally sufficient evidence of protected action "to establish a *prima facie* case of Title VII retaliation predicated on any alleged adverse employment actions *prior to December 2012*." (Doc.89 at p.40)(emphasis added). Accordingly, the first element of a *prima facie* case of retaliation is present. Moreover, there is a genuine issue of material fact as to the alleged adverse actions which occurred before December 2012. Key alleges that he was subject to retaliation after he refused Laraway's direction to issue a reprimand to his subordinate Lamar in June 2012. (Doc. 112-4 at ¶ II). Key alleges that he "was directed to reprimand Lamar for alleged deficiencies which [he] felt were discriminatory. [Key] refused to reprimand Lamar and questioned the directives and motivations of Laraway." (Doc. 118-2 at ¶ 14). "The opposition clause makes it 'unlawful ... for an employer to discriminate against any ... employe[e] ... because he has opposed any practice made ... unlawful ... by this subchapter.' § 2000e–3(a)." *Crawford*, 555 U.S. at 276. The Supreme Court has held that it "would call it 'opposition' if an employee took a stand against an employer's discriminatory practices not by 'instigating' action, but by standing pat, say, by refusing to follow a supervisor's order to fire a junior worker for discriminatory reasons." *Id.* at 277. Accordingly, there is a genuine issue of material fact whether Key's opposition to Laraway's directive and his questioning of her

motives was an opposition giving rise to protected activity.

### 2. Adverse Employment Action

Defendants next argue that "Key cannot establish that he suffered an adverse employment action in retaliation regarding ... parts of his claims." (Doc. 89 at p.40). To satisfy the second element of a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have "dissuaded a reasonable worker from making or supporting a charge of discrimination"' *Rochon*, 438 F.3d, at 1219 (quoting *Washington*, 420 F.3d, at 662)." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Although Defendants take issue with several events which they claim do not qualify as adverse employment actions, the record is clear that Key's employment was terminated on April 10, 2013, which is a materially adverse employment action. *See Crawford*, 529 F.3d at 970-71.

### 3. But-For Causation

Defendants next argue that Key's articulation of multiple retaliatory motives precludes him from recovery on his retaliation claims. (Doc. 89 at p.48). Defendants predicate this argument, as they also did in their motion as to Lamar's claims, on the law applicable to claims brought under the Age Discrimination in Employment Act, 29 U.S.C. §621ff ("ADEA"). Based on the case law applicable to ADEA claims,

35

Defendants assert that Key "cannot simultaneously advance his retaliation claims along with his disability discrimination claim in this lawsuit, because his retaliation claim requires him to prove that his protected conduct was *the* 'but for' cause of the decisions to take the allegedly adverse actions against  him." (Doc. 89 at pp.48-49)(emphasis added). Defendants' assertion is, again, an attempt to conflate the requirement announced in *Nassar,*133 S. Ct. at 2534, that Title VII plaintiffs must present "*a* but-for cause of the alleged adverse action by the employer" with the requirement applicable to an"ADEA claim ... [which] requir[es] plaintiffs to show that age was *the* 'but for' cause of an employment action." *Mora v. Jackson Mem'l Found., Inc.*, 597 F.3d 1201, 1204 (11th Cir. 2010)(emphasis added).  Key has not alleged claims under the ADEA, and the requirements of a single but-for motive as applicable to ADEA claims are inapposite to Key's Title VII retaliation claims. Therefore, Defendant's argument for summary judgment on this issue is due to be denied.

Defendants also argue the "Key lacks any direct or circumstantial evidence connecting any of his alleged protected activity to any allegedly adverse employment action as the causation element requires." (Doc. 89 at p.50).  However, this argument ignores the fact that Key's employment with DCNR was terminated on April 10, 2013, six day after he filed his amended his EEOC Charge on April 4, 2013. (Doc.

36

116-31 at p.2).  It is clear that Key suffered an adverse employment action in close temporal proximity to his protected action under Title VII.

Defendants argue that "Key has no evidence whatsoever that Commissioner Guy made the decision to terminate Key's employment with any knowledge Key had filed Charges of Discrimination with the EEOC." (Doc. 89 at p.52, citing Doc. 90-3 at 19-20). *See Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000)("A decision maker cannot have been motivated to retaliate by something unknown to him. As with most facts, the defendant's awareness can be established by circumstantial evidence.").  The record indicates that on May 25, 2013, Key's Pretermination Hearing was conducted "in the commissioner's conference room" in the presence of General Counsel William Gunter and Assistant Deputy Counsel Jennifer Weber.  Key's EEOC charges of discrimination and retaliation were discussed extensively at that hearing. (Doc. 91-40 at pp.20-33).  On April 10, 2013, Commissioner Guy sent a letter to Key in which Guy acknowledges that the pre-dismissal conference was conducted "on March 25 at 1:30 P.M. in the Commissioner's conference room" and that Key "spoke for approximately an hour and thirty minutes and had a full opportunity to tell [Deputy Commissioner] Jones your side of the story." (Doc. 116-20 at p.11).  Nevertheless, despite stating his knowledge that the hearing occurred in his conference room and how long Key spoke

37

at the hearing and having based his decision to terminate Key's employment on his review of "Key's disciplinary history and work performance with DCNR over many years and under a variety of supervisors," (Doc. 90-3 at ¶ 22), Commissioner Guy submitted an affidavit disavowing any knowledge that Key had filed a charge and an amended charge with the EEOC, that "Key had requested leave in order to stop taking the prescription medications," and that "Key was requesting a job in any other job classification prior to the termination of his employment." (Doc. 90-3 at ¶¶19-23). The Eleventh Circuit has stated that consideration of a motion for summary judgment in regard to the knowledge of a decision-maker in a Title VII retaliation claim "turns upon the answer to a single question: whether or not there are reasonable inferences from the evidence such that a reasonable jury could conclude that the decision-maker knew that Plaintiff was making [claims upon which retaliation is claimed]." *Lippert v. Cmty. Bank, Inc.*, 438 F.3d 1275, 1281 (11th Cir. 2006)(reversing summary judgment where "[t]he district court's ... conclusion ... relied on the self-serving testimony of the decision-maker."). In this case, the "unrebutted" evidence upon which Defendants would rely is Commissioner Guy's self-serving affidavit. (Doc. 89 at p.52). However, Commissioner Guy's affidavit stands in opposition to other evidence in the record that he was aware of Key's Pretermination Hearing in his own conference room, how long the hearing lasted, who was there, and the fact that Key

38

made extensive statements at the hearing regarding his side of the story. Nevertheless, Commissioner Guy claimed that he made his decision to terminate Key in complete ignorance of what Key actually said in that hearing and that his General Counsel and Deputy Counsel investigated and responded to Key's EEOC Charge without ever mentioning it to him. Accordingly, there are genuine issues of fact on the basis of which a reasonable jury could conclude that Commissioner Guy as the decision-maker knew that Key had filed an EEOC complaint.

Defendants next argue that Key cannot come forward with evidence that DCNR's legitimate, non-retaliatory reasons for the termination of Key's employment was pretextual. (Doc. 89 at p.52). Specifically, Defendants argue that Key was terminated because of inability to perform essential functions of his job, a long disciplinary history, and subpar evaluations. (Doc. 89 at p.55). Key responded by arguing several theories to demonstrate that Defendants' non-retaliatory reasons for the termination of his employment were a pretext for retaliation. (Doc. 101 at pp.16-33). Once a plaintiff establishes a *prima facie* case, the burden shifts to the employer to show, through admissible evidence, a legitimate, non-retaliatory reason for the adverse employment action. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981). If a defendant carries its burden of producing "admissible evidence which would allow the trier of fact rationally to conclude that the employment

decision had not been motivated by [retaliatory] animus," *Id*. at 257, the presumption of retaliation created by the *prima facie* case "drops from the case," and "the factual inquiry proceeds to a new level of specificity." *Id.* at 255 & n.10. The burden then shifts to the plaintiff to "come forward with evidence, including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision," but merely pretext for retaliation. *Combs*, 106 F.3d at 1528 (citing *Burdine*, 450 U.S. at 256; *McDonnell Douglas*, 411 U.S. at 804).

The Supreme Court recently clarified a plaintiff's burden and held that, as to the causation standard for a retaliation claim, a plaintiff must "show that the [adverse employment action] would not have occurred in the absence of — that is, but-for — the defendant's conduct." *Nassar*, 133 S. Ct. at 2525.[4]  In other words, a plaintiff has to "establish that his or her protected activity was a but-for cause [and not just a motivating factor] of the alleged adverse employment action by the employer." *Nassar*, 133 S. Ct. at 2534.

In this case, the record indicates that Key's Performance Appraisals ranged

_____

[4] There is a split among various federal courts as to whether it is appropriate to impose the *Nassar* standard at the *prima facie* or pretext stage of analysis. The conflict need not be resolved or even addressed here.

from a high score of 31.3 with no disciplinary deductions for 2006-2007 (Doc. 116-19 at p.4), to a low of 15.0 with no disciplinary deductions for 2011-2012 (Doc. 90-39 at p.2). Key received 7-point disciplinary deductions for each of the Performance Appraisals for the periods 2007-2008, 2008-2009, and 2010-2011 for work-schedule reporting violations. (Doc. 116-19 at pp.7-15, 18-19). Key's Performance Appraisal score was 15.5 with a 7-point disciplinary deduction in 2009-2010. (Doc. 90-37). However, Key was not subject to termination proceedings for any of these scores or disciplinary issues until after he refused and questioned a direction from Laraway to issue a reprimand to his subordinate Lamar in June 2012. (Doc. 112-4 at ¶II). Following Key's refusal to issue reprimands to Lamar in June 2012, Laraway advised Key to resign or be fired on September 21, 2012. (Doc. 112-4 at ¶ II). On December 11, 2012, Key filed a complaint of discrimination with Dwyer, and filed a Charge of Discrimination with EEOC on February 6, 2013. (Doc. 112-4 at p.1 and ¶ III). Key's employment with DCNR was terminated on April 10, 2013, six day after he filed his amended his EEOC Charge on April 4, 2013. (Doc. 116-31 at p.2). Viewing the evidence in the light most favorable to Key as the non-moving party, particularly Key's Performance Appraisals, Defendants' proffered nondiscriminatory reason of Key's disciplinary history and ability to perform his duties never appeared to threaten Key's continued employment until after he refused to issue reprimands to Lamar and

filed charges of discrimination.  Accordingly, there is a genuine issue of material fact

whether Defendants' reasons for terminating Key's employment were a pretext for

retaliation.

E. Retaliatory Hostile Work Environment Claim

Defendants argue that "Key lacks sufficient evidence to necessitate a jury trial

on his retaliatory hostile environment claim." (Doc. 89 at p.56).  As noted above,

> To establish a hostile work environment claim under Title VII, the
> plaintiff must show that "the workplace is permeated with
> discriminatory intimidation, ridicule, and insult, that is sufficiently
> severe or pervasive to alter the conditions of the victim's employment
> and create an abusive working environment." *Harris v. Forklift Sys.,
> Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Miller v.
> Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

*Gowski v. Peake*, 682 F.3d 1299, 1311 (11th Cir. 2012).  In regard to the specific

claim of retaliatory hostile environment, the Eleventh Circuit further stated:

> The requirement that the harassment be "severe or pervasive"
> contains an objective and a subjective component. *Miller*, 277 F.3d at
> 1276. "Thus, to be actionable, this behavior must result in both an
> environment that a reasonable person would find hostile or abusive and
> an environment that the victim subjectively perceive[s] ... to be
> abusive." *Id*. (internal quotation marks omitted). In evaluating the
> objective severity of the harassment, this court looks at the totality of the
> circumstances and considers, among other things: "(1) the frequency of
> the conduct; (2) the severity of the conduct; (3) whether the conduct is
> physically threatening or humiliating, or a mere offensive utterance; and
> (4) whether the conduct unreasonably interferes with the employee's job
> performance." *Id*. "[W]hether an environment is 'hostile' or 'abusive'
> can be determined only by looking at all the circumstances." *Harris*, 510

U.S. at 23, 114 S.Ct. 367.

Discrete acts cannot alone form the basis of a hostile work environment claim. *See Davis v. Coca–Cola Bottling Co. Consol.*, 516 F.3d 955, 970 (11th Cir. 2008) (emphasis added); see also *McCann v. Tillman*, 526 F.3d 1370, 1378 (11th Cir. 2008) (as opposed to "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire," a hostile work environment claim addresses acts "different in kind" whose "very nature involves repeated conduct," such as "'discriminatory intimidation, ridicule, and insult.' " (quoting *Nat'l R.R. Passenger Corp.*, 536 U.S. at 117, 122 S.Ct. 2061)). But the jury could consider discrete acts as part of a hostile work environment claim. *See, e.g.*, *Nat'l R.R. Passenger Corp.*, 536 U.S. at 117, 122 S.Ct. 2061 (a hostile work environment claim depends on "a series of separate acts that collectively constitute one 'unlawful employment practice.' " (internal citation omitted)); *see also Chambless v. Louisiana–Pacific Corp.*, 481 F.3d 1345, 1349–50 (11th Cir. 2007) (discussing, for timeliness purposes, discrete acts that are sufficiently related to a hostile work environment claim that they can be considered part of the same claim).

*Gowski*, 682 F.3d at 1312-13.

Key argued in response that he:

was exposed to a hostile environment, scrutinized, singled out, unfairly reprimanded, unfairly suspended and eventually terminated.  Key's attempts to object to discriminatory conduct were met with open hostility, drug testing,  medical inquiries and EAP counseling, mandatory administrative leave without pay, and eventually termination. Other similarly situated employees were likewise subjected to retaliation creating an environment that was insulting, intimidating and humiliating.

(Doc. 101 at p.37).  In his response, Key does not identify any of the similarly situated employees whom he claims experienced similar retaliation, nor does he cite

43

to the points in the record upon which he would rely for support of this argument. However, even viewing the evidence in the light most favorable to Key, he has argued a string of discrete acts over a period of nearly a year, of varying severity, none of which were physically threatening or humiliating, and which only interfered with his job performance to the extent that he was on suspension or leave from his duties. *See Gowski*, 682 F.3d at 1312-13. While Key's noted string of discrete acts would be sufficient to make out a *prima facie* case of retaliation, without more, this evidence is insufficient to make out a *prima facie* case of retaliatory hostile work environment. Accordingly, Defendants' motion for summary judgment is due to be granted on this claim.

F. ADA Claims - Eleventh Amendment Immunity

Defendants assert that "a plaintiff may not bring suit against a State or an arm of the State under the ADA absent a waiver of sovereign immunity." (Doc. 89 at p.71)(citing *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 374, 121 S. Ct. 955, 968, 148 L. Ed. 2d 866 (2001)). In *Garrett*, the Supreme Court stated:

> Our holding here that Congress did not validly abrogate the States' sovereign immunity from suit by private individuals for money damages under Title I does not mean that persons with disabilities have no federal recourse against discrimination. Title I of the ADA still prescribes standards applicable to the States. Those standards can be enforced by the United States in actions for money damages, as well as by private individuals in actions for injunctive relief under *Ex parte Young*, 209

44

U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). In addition, state laws protecting the rights of persons with disabilities in employment and other aspects of life provide independent avenues of redress.

*Garrett*, 531 U.S. at 374 n.9.  Defendants argue that "the 2008 amendments to the ADA did not properly abrogate [the] States' Eleventh Amendment Immunity." (Doc. 89 at p.71)(citing *Lucas v. State of Ala. Dep't of Public Health*, No. 3:15-cv-941-WKW, 2016 WL 335547, at *3 n.5 (M.D. Ala. Jan. 7, 2016)("While the ADAAA post-dates *Garrett*, the ADAAA does not 'alter *Garrett's* conclusion that the remedies imposed by the ADA are not "congruent and proportional" to the targeted violations.' *Parten v. Alabama Department of Tourism*, 100 F.Supp. 3d 1259, 1272 (M.D. Ala. 2015) (citations omitted)."); *Parten v. Ala. Dep't of Tourism*, 100 F. Supp. 3d 1259, 1272 (M.D. Ala. 2015)("Parten has not pointed to, and the court has not found, anything in the ADAAA that would alter *Garrett's* conclusion that the remedies imposed by the ADA are not 'congruent and proportional' to the targeted violations."); and *Adamson-James v. Fla. Dep't of Corr.*, No. 6:11-cv-628-ORL-36, 2013 WL 1968499, at *4 (M.D. Fla. May 13,  2013)("[T]his Court cannot find that Title I of the ADA, as amended by the ADAAA, is a constitutionally valid abrogation of the States' Eleventh Amendment immunity from suits for money damages.")).

Although Key argues in response that he met all the *prima facie* requirements for an ADA claim, Key's response to Defendants' arguments based on the Eleventh

Amendment is, in its entirety, "Plaintiff asserts that his equitable claims of reinstatement under the ADA will survive Eleventh Amendment Immunity." (Doc. 101 at p.53).  Key makes no argument in his response that he is entitled to money damages under his ADA claims or that those claims are excepted from sovereign immunity.  Accordingly, Defendants' motion for summary judgment is due to be granted as to Key's ADA claims to the extent that he seeks money damages.[5]

Defendants further argue that Key cannot state a viable claim for equitable or injunctive relief under his ADA claim.  As noted above, Key did not state a detailed response to this argument.

> Under the doctrine of *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), however, there is a long and well-recognized exception to this rule for suits against state officers seeking prospective equitable relief to end continuing violations of federal law. *See Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 269, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997) ("We do not ... question the continuing validity of the Ex parte Young doctrine.")....

> The Eleventh Amendment generally does not bar the exercise of the judicial power of the United States where a plaintiff seeks to compel a state officer to comply with federal law. *See Ex parte Young*, 209 U.S. at 158–59, 28 S.Ct. 441. Because the enforcement of "an unconstitutional statute is void, and therefore does not 'impart to [the

---

[5]Defendants also argue that "the claims against Lein and Laraway in their official capacities are claims against DCNR.  To the extent to that these claims seek money damages, the State's immunity protects Lien and Laraway in their official capacities..." (Doc. 89 at p.72).  Key offers no argument in response.  This argument is otherwise addressed *supra* in Section **IV**.A.

officer] any immunity from responsibility to the supreme authority of the United States,' " the Supreme Court has held that the officer is not entitled to protection by the state's sovereign immunity. *Green v. Mansour*, 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985) (quoting *Ex parte Young*, 209 U.S. at 160, 28 S.Ct. 441); *see also Coeur d'Alene*, 521 U.S. at 288, 117 S.Ct. 2028 (O'Connor, J., concurring) ("The Young doctrine recognizes that if a state official violates federal law, he is stripped of his official or representative character and may be personally liable for his conduct; the State cannot cloak the officer in its sovereign immunity.")....

Thus, the availability of this doctrine turns, in the first place, on whether the plaintiff seeks retrospective or prospective relief. As the Supreme Court has explained:

> "Young has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past, as well as on cases in which the relief against the state official directly ends the violation of federal law as opposed to cases in which that relief is intended indirectly to encourage compliance with federal law through deterrence or directly to meet third-party interests such as compensation. As we have noted: 'Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law. But compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment.'"

*Papasan v. Allain*, 478 U.S. 265, 277–78, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (quoting *Green*, 474 U.S. at 68, 106 S.Ct. 423). Therefore, the Eleventh Amendment bars suits against state officials in federal court seeking retrospective or compensatory relief, but does not generally prohibit suits seeking only prospective injunctive or declaratory relief. *See Green*, 474 U.S. at 68, 106 S.Ct. 423. If the prospective relief sought is the functional equivalent of money damages,

47

however, i.e., "[i]t is measured in terms of a monetary loss resulting from a past breach of a legal duty," Ex parte Young does not apply. *Edelman*, 415 U.S. at 669, 94 S.Ct. 1347.

Because of the important interests of federalism and state sovereignty implicated by *Ex parte Young*, however, the doctrine is not without limitations—indeed, two are relevant to this appeal. First, the *Ex parte Young* doctrine applies only to ongoing and continuous violations of federal law. *See Papasan*, 478 U.S. at 277–78, 106 S.Ct. 2932; *Green*, 474 U.S. at 68, 106 S.Ct. 423. In other words, a plaintiff may not use the doctrine to adjudicate the legality of past conduct. *See Papasan*, 478 U.S. at 277–78, 106 S.Ct. 2932.

*Summit Med. Associates, P.C. v. Pryor*, 180 F.3d 1326, 1336-37 (11th Cir. 1999). In this case, the Amended Complaint does state some claims for equitable relief. Key's Prayer for Relief requests "a declaratory judgment that the actions, policies and practices complained of herein of the defendants violate the Plaintiffs' federally protected rights," "a preliminary injunction" against the same actions, policies and practices, and a prospective order enjoining Defendants from "engaging in practices that discriminate against Plaintiffs" and to restore Key's employment status and classification. (Doc. 29 at ¶¶ A-C).  To the extent that Key's complaint seeks retrospective relief under the ADA, the *Ex parte Young* doctrine does not provide an exception from the Eleventh Amendment bar to his claims against Lien and Laraway, who are the only two remaining state officials Key has named in this suit. Key has not alleged any continuing violations of the ADA. Moreover, the extent that Key seeks

48

prospective relief to compel Lien and Laraway to reinstate his employment, the record

contains undisputed testimony from Commissioner Guy that he "is the only person

within DCNR with the legal authority to approve the placement of an employee into

a position in a Merit System job classification." (Doc. 90-3 at ¶ 11).   Because Key

seeks to compel Lien and Laraway to engage in actions for which they do not have

legal authority in their official capacities, Key fails to demonstrate any equitable relief

to which he would be entitled by his ADA claims.   Accordingly, Defendant's motion

for summary judgment is due to be granted as to Key's ADA claims.

G. Eleventh Amendment - FMLA Claim

Defendants next argue that "the Eleventh Amendment bars any claim against

DCNR pursuant to the self-care provision of the FMLA." (Doc. 89 at p.77). *See*

*Coleman v. Court of Appeals of Maryland*, 132 S. Ct. 1327, 1338, 182 L. Ed. 2d 296

(2012)("To abrogate the States' immunity from suits for damages under § 5 [of the

Fourteenth Amendment], Congress must identify a pattern of constitutional violations

and tailor a remedy congruent and proportional to the documented violations. It failed

to do so when it allowed employees to sue States for violations of the FMLA's self-

care provision.").   Key, in response, admits that "this may make the FMLA claims

asserted for leave requested in 2013 unenforceable...” (Doc. 101 at p.53).[6]  Key

presents no authority to the contrary.  Rather, Key argues that “DCNR’s arguments

... do not cover absences that were taken to care for Key’s sick wife” and that he

“requested leave and informed Guinn and Laraway of the reason for his requested

leave and the need to care for his wife.” (Doc. 101 at p.53).  However, the citations

to the record offered by Key reflect that he discussed his wife’s illness at his

pretermination hearing but do not reflect that he requested FMLA relief to care for

his wife.  *See* Doc. 118-2 at ¶49 (“I begged Jones to consider reinstating me to

another position and explained that I needed the medical insurance due to my wife’s

serious illness.”); and Doc. 118-15 at ¶51 (“I also defended my performance noting

absences were related to my wife’s illness or because of an on-the-job injury.”).  Even

construing the evidence in the light most favorable to Key, he has failed to

demonstrate that his requests pursuant to FMLA were for anything other than self

care.  Accordingly, Defendants’ motion for summary judgment as to Key’s FMLA

claim is due to be granted.[7]

---

[6]Key further argues that “[e]ven if claims are not enforceable against the State, this is evidence of pretext.” (Doc. 101 at p.53).  Key’s pretext arguments are otherwise addressed above.

[7]Because the undersigned Magistrate Judge recommends granting summary judgment as to Key’s FMLA claim in favor of the Defendants on the basis of sovereign immunity, discussion of Defendants’ alternate argument on this claim is

H. Rehabilitation Act Claims - Causation

Defendants next argue that Key's Rehabilitation Act claim "cannot succeed unless the plaintiff's disability or protected conduct was the only reason the employer took the challenged action." (Doc. 89 at pp.81-82). *See Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005)("It is not enough for a plaintiff to demonstrate that an adverse employment action was based partly on his disability. *See McNely v. Ocala Star–Banner Corp.*, 99 F.3d 1068, 1074 (11th Cir. 1996). Rather, under the Rehabilitation Act, a plaintiff must prove that he suffered an adverse employment action 'solely by reason of' his handicap. 29 U.S.C. § 794(a)"). Key argues in response that "there were retaliatory motives in violation to Title VII that brought us to that pivotal point, it was the disability itself that was the reason for the termination. The retaliation was the non-essential contributing event that motivated DCNR to drug test Key and to mandate that he undergo psychological and psychiatric examinations." (Doc. 101 at p.52). Key's argument that Defendants retaliated against him in violation of Title VII up until the "pivotal point" of his termination, at which point Defendants but-for motivation suddenly and completely switched to his disability is unsupported by the record and at odds with the allegations Key made in the Amended Complaint (Doc. 29 at ¶¶ 146, 151-52), as well as arguments Key made

pretermitted. *See* Doc. 89 at pp.79-80.

throughout his response brief.[8] Accordingly, Defendant's motion for summary judgment as to Key's claim of "Interference" under the Rehabilitation Act in Count VI is due to be granted.[9]

I. Rehabilitation Act Retaliation Claim

Defendants next argue that Key cannot establish a *prima facie* case of retaliation under the Rehabilitation Act or demonstrate that Defendants non-retaliatory reasons for his termination were a pretext for retaliation. The Rehabilitation Act incorporates standards established by the ADA, expressly including 42 U.S.C. § 12203, the ADA's anti-retaliation provision. 29 U.S.C. § 794(d); 42 U.S.C. § 12203(a); *Albra v. City of Ft. Lauderdale*, 232 Fed. App'x. 885,

---

[8]*See, e.g.,* (Doc. 101 at pp.17-18):

> Key submits the July 10, 2012, reprimand issued by Laraway and the September proposed termination occurred within a short time frame of Key's refusal to reprimand Lamar in July, 2012. Similarly, the close timing between Plaintiff's written complaints of discrimination on December 17, 2012, and DCNR's direction for drug testing January16, 2013, just 30 days after he filed internal complaints, infer retaliation. Thereafter, Key filed an EEOC Charge of Discrimination on February 4, 2013. On February 7, Key submitted to a mandatory drug test that was 52 days from his December complaint. On March15, 2013, Key's Notice of Pre-Dismissal Hearing was issued by Wishum recommending Key's termination.

[9]Because summary judgment is due to be granted on the lack of but-for causation, discussion of Defendant's further arguments regarding Count VI of the Amended Complaint are pretermitted. *See* Doc. 89 at pp.100-106.

891 (11th Cir.), cert. den. 552 U.S. 872 (2007). Thus, the Rehabilitation Act prohibits "retaliation against individuals who have opposed disability discrimination by issuing complaints or taking other actions." *Barton v. Board of Regents of the University System of Georgia*, 478 Fed. App'x. 627, 631 (11th Cir. 2012). To establish a *prima facie* case of retaliation under the Rehabilitation Act, a plaintiff must show "that she engaged in a protected activity, that she suffered an adverse employment action, and that the protected activity was causally connected to the adverse employment action." *Garrett v. University of Alabama at Birmingham Board of Trustees*, 507 F.3d 1306, 1316 (11th Cir. 2007). To establish a *prima facie* case of retaliation, the plaintiff must show that: (1) he engaged in statutorily protected expression; (2) he suffered a materially adverse action; and (3) there was some causal relationship between the two events. See *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997); *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67, 126 S.Ct. 2405, 2414, 165 L.Ed.2d 345 (2006).  Where a plaintiff offers no direct evidence of employment discrimination, his case can be analyzed using the burden-shifting paradigm of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Bryant v. Jones*, 575 F.3d 1281, 1307–08 (11th Cir.2009).

Key filed a Charge of Discrimination with EEOC on February 6, 2013. (Doc. 112-4 at p.1 and ¶ III).  Key's Charge of Discrimination included a claim that he had

"been discriminated against in the terms and conditions of [his] employment with [DCNR] as a result of [his] disability in violation of the American's with Disabilities Act." (Doc. 112-4 at ¶ XII).  Therefore, he engaged in a statutorily protected action. Key's employment with DCNR was terminated on April 10, 2013, six days after he filed his amended his EEOC Charge on April 4, 2013, which also contained the same allegation of discrimination on account of his alleged disability. (Doc. 116-31 at ¶ XII).  Therefore, Key suffered an adverse employment action in close proximity to his protected action.  As noted above in Section **IV**.D.3, viewing the evidence in the light most favorable to Key as the non-moving party, Defendants' proffered nondiscriminatory rationale involving Key's disciplinary history and ability to perform his duties had not previously threatened Key's continued employment until after he filed charges of discrimination.  Accordingly, there is a genuine issue of material fact whether Defendants' reasons for terminating Key's employment were a pretext for retaliation, and summary judgment is due to be denied on this issue.[10]

J. Rehabilitation Act Discrimination Claims

---

[10]Defendants also argue that "here, the ultimate decision maker had no knowledge whatsoever of any protected conduct at the time he made the challenged adverse employment action." (Doc. 89 at p.84).  However, as discussed above, there are genuine issues of fact on the basis of which a reasonable jury could conclude that Commissioner Guy as the decision-maker knew that Key had filed an EEOC complaint.

Defendants next argue that they are entitled to summary judgment to the extent that Key's claims under the Rehabilitation Act may be considered claims of discrimination.  Defendants argue that Key's claim for "Interference" in Count VI of the Amended Complaint "does not give fair notice of a Rehab Act discrimination claims distinct from the claim arising out the alleged failure to make reasonable accommodations for alleged disability, the Amended Complaint fails to put defendant on notice that key is bringing a claim pursuant to either the Rehab Act or the ADA based on the alleged discrimination against him because of a disability, a record of a disability, or a perception that he had a disability." (Doc. 89 at p.87).  Defendants do not cite any authority for the proposition  that the Eleventh Circuit has recognized a distinct cause of action of "Interference" pursuant to the Rehabilitation Act nor are there any such cases.  "It is the substance of the claim and not the language used in stating it which controls." *Gaudet v. United States*, 517 F.2d 1034, 1035 (5th Cir. 1975).  In this case, as Defendants note, Count VI is most closely in substance a claim of discrimination under the Rehabilitation Act. However, to the extent that Key's claim in Count VI might otherwise be considered a discrete claim of discrimination under the Rehabilitation Act, as noted above, Key failed to prove that he suffered an adverse employment action "solely by reason of his ... disability." 29 U.S.C. § 794(a). Therefore, Defendant's argument on this issue is due to be denied as moot.

K. Drug Testing

Defendants next argue that "Key may contend that the fact that he was asked to submit to a drug test and to evaluations of his fitness for duty support a violation of federal disability law, but this is not so." (Doc. 89 at p.99).   However, the Amended Complaint does not state a claim for relief from being required to submit to a drug test or evaluation.  In fact, Key's claims for relief pursuant to the ADA and the Rehabilitation Act in Counts V and VI do not mention drug testing or related evaluations. Accordingly, Defendants' argument does not present an issue on which summary judgment could be granted.

L. Further Claims

Defendants also argue that Key "raised many claims in response to discovery in this action of which the Amended Complaint provides no notice whatsoever. The Court must not allow unpled claims to defeat Defendants' properly supported motion on the claims of which the Amended Complaint provides fair notice." (Doc. 89 at p.107).  Defendants do not identify which claims, if any, they would have this court disallow.  Accordingly, Defendants' motion for summary judgment as to the unidentified, "unpled claims" is due to be denied.

## VI. KEY'S MOTION FOR PARTIAL SUMMARY JUDGMENT

A. ADA and Rehabilitation Act Claims

Key first argues that he is entitled to summary judgment on his claims pursuant to the ADA and Section 504 of the Rehabilitation Act in Counts V and VI of the Amended Complaint. (Doc. 80 at pp.16-36).  However, as discussed above, it is the recommendation of the undersigned Magistrate Judge that Defendants' motion for summary judgment is due to be granted as to Key's claims pursuant to the ADA. Accordingly, Key's motion for summary judgment as to his ADA and Rehabilitation Act claims is due to be denied.

B. FMLA Violations

Key next argues that he "is entitled to a motion for summary judgment on his FMLA claim as a matter of law." (Doc. 80 at p.39).  However, as discussed above, it is the recommendation of the undersigned Magistrate Judge that Defendants' motion for summary judgment as to Key's FMLA claim is due to be granted on the basis of Eleventh Amendment immunity; therefore, Key's motion for summary judgment on the same claim is due to be denied.

**VII. CONCLUSION AND RECOMMENDATION**

Accordingly, for the reasons as stated, it is the **RECOMMENDATION** of the Magistrate Judge that Plaintiff Key's motion for partial summary judgment (Doc. 79) is due to be **DENIED**.

Defendants' motion for summary judgment with regard to Lamar's claims

(Doc. 86) is due to be **GRANTED IN PART** and **DENIED IN PART**.  Summary judgment is due to be **GRANTED** as to Lamar's Title VII and race discrimination claims against Lein and Laraway in their official capacities in Counts I-IV; as to Lamar's claim in Count III for Disparate Treatment in Violation of Title VII; and as to Lamar's claim in Count IV of Constructive Demotion as that claim is subsumed in her surviving Title VII claims.  Summary judgment is due to be **DENIED** as to a pattern and practice claim which Lamar did not claim; as to Defendants' argument that Lamar failed to exhaust her administrative remedies as they relate to retaliation claims arising after she filed her EEOC charge in April 2013; as to Lamar's claim in Count I of the Amended Complaint for Title VII Retaliation; as to Lamar's claim in Count II of the Amended Complaint for Retaliatory Hostile Work Environment; and as to any unidentified and unpleaded claims.

Defendants' motion for summary judgment with regard to Key's claims (Doc. 88) is due to be **GRANTED IN PART** and **DENIED IN PART**.  Summary judgment is due to be **GRANTED** as to Key's Title VII and race discrimination claims against Lein and Laraway in their official capacities in Counts I-VII; as to Key's claim in Count II for Retaliatory Hostile Work Environment; as to Key's ADA claims in Counts V and VI; as to Key's FMLA claim in Count VII; and as to Key's claim of Interference under Section 504 of the Rehabilitation Act in Count VI.  Summary

58

judgment is due to be **DENIED** as to a pattern and practice claim which Key did not claim; as to Defendants' argument that Key failed to exhaust his administrative remedies by not filing or amending his EEOC charge after the termination of his employment; as to Key's claim in Count I alleging Retaliation in violation of Title VII in Count V; as to Key's claim of Retaliation under the Rehabilitation Act; as to any implicit claim of Discrimination distinct from Key's Interference claim under the Rehabilitation Act; and as to drug testing or any other unidentified and unpleaded claims.

It is **ORDERED** that the parties shall file any objections to the said Recommendation on or before **August 9, 2016.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*,

677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).

      **DONE** and **ORDERED** this 26th day of July, 2016.

                          /s/ Paul W. Greene
                          United States Magistrate Judge